## ANTHONY GENTLE v. NORTHERN STATES POWER COMPANY.[1]

November 13, 1942.

No. 33,287.

[1]Reported in 6 N. W. (2d) 361.

*Weyl & Weyl* and *Lystad, Mantor & Strauman,* for appellant.
*Fred A. Ossanna* and *Carlson & Carlsen,* for respondent.

PETERSON, JUSTICE.

Plaintiff sues to recover damages for personal injuries.

The complaint alleges that plaintiff was injured, while he was working on the roof of a building of the Northern Pump Company in Anoka county, through defendant's negligence in placing and maintaining a certain high-tension wire over the building in close proximity to the roof, failing to properly insulate the wire, and transmitting through the wire, under the circumstances, electricity of high voltage.

In the answer defendant denied that it was guilty of negligence and alleged that plaintiff was guilty of contributory negligence and assumption of risk, and—

"that said wires [evidently defendant claimed that there was more than one wire] were so placed for the exclusive purpose of delivering electricity to said Northern Pump Company, and which it used in the operation of its business, and that at the time of said accident the plaintiff, said Northern Pump Company and this defendant were subject to the terms of the Workmen's Compensation Act of the State of Minnesota, and were engaged in the due course of business in the accomplishment of the same or related purposes in operation on the premises where the injuries were received, and that the rights of all parties hereto are governed and subject to

Subsection 1, Section 5, Chapter 64, Session Laws of Minnesota 1937.

"Further answering defendant alleges that plaintiff has elected to take compensation from his employer and has filed a petition therefor with the Industrial Commission of the State of Minnesota, and that he has been receiving compensation payments pursuant to said Act."

On plaintiff's motion, the portions of the answer relating to the defense of same or related purposes under the workmen's compensation act were ordered stricken as irrelevant.

Then defendant moved for leave to amend the answer by inserting therein in lieu of the part ordered stricken certain allegations in amplification thereof to the effect that the Northern Pump Company had constructed the building in question for use as a factory in which to manufacture gun mounts and other items under contract with the United States Navy; that defendant installed the wires, subject to change of location upon order, for the exclusive purpose of delivering electricity to the pump company for use in the operation of its business; that the building was constructed and the wires installed pursuant to the regulations of the Navy department; that plaintiff was employed by A. E. Thomas Decorating Company, which had a contract with the Northern Pump Company to prime, paint, spray, and do similar work on the building; and that he was engaged at the time of injury in performing labor incident to his employer's contract.

The proposed amendment also alleged, as did the stricken portions of the answer, that defendant and plaintiff's employer were engaged at the time in the accomplishment of the same or related purposes in operation on the premises where the injuries were received; that all parties concerned were subject to part 2 of the workmen's compensation act; and that plaintiff's exclusive remedy was the recovery of workmen's compensation, of which he had availed himself by applying for and receiving such workmen's compensation. Leave to amend was denied.

Defendant appeals from both orders—the one striking as irrelevant portions of the answer to the effect that plaintiff's employer and defendant were engaged in the same or related purposes and that plaintiff's sole remedy was under the workmen's compensation law, and the other denying defendant leave to amend its answer by inserting therein the allegations mentioned in lieu of and in amplification of the portions stricken.

Here defendant's position is stated in its brief to be "that in maintaining this pole line solely and exclusively for the Northern Pump Company it was assisting said company in the operation of its business and so was the plaintiff in doing his work and that they were engaged in the accomplishment of the same or related purposes in operation on the premises where the injury was received."

Decision depends upon the construction of Minn. St. 1941, § 176.06 (Mason St. 1940 Supp. § 4272-5), which so far as here material provides:

"Subdivision 1. Where an injury or death for which compensation is payable under circumstances also creating a legal liability for damages on the part of any party other than the employer, such party being at the time of such injury or death insured or self-insured in accordance with section 176.03, the employee in case of injury, or his dependents in case of death, may, at his or their option, proceed either at law against such party to recover damages or against the employer for compensation, but not against both.

\* \* \* \* \*

"The provisions of subdivision 1 of this section shall apply only where the employer liable for compensation and the other party or parties legally liable for damages were both either insured or self-insured and were engaged in the due course of business, (a) in furtherance of a common enterprise, or (b) the accomplishment of the same or related purposes in operation on the premises where the injury was received at the time thereof, and not otherwise."

Under the statute plaintiff is not entitled to maintain this action if his employer and defendant were engaged in the accomplishment of the same or related purposes in operation on the premises where the injury was received at the time thereof.

The argument as to the meaning of the statute has taken a wide range, but we do not deem it necessary to pursue all the arguments, because we have fully stated the history of the statute and settled its construction in such recent decisions as Tevoght v. Polson, 205 Minn. 252, 285 N. W. 893, which we followed in Smith v. Ostrov, 208 Minn. 77, 292 N. W. 745, and in Smith v. Kedney Warehouse Co. Inc. 197 Minn. 558, 267 N. W. 478, 269 N. W. 633.

In Tevoght v. Polson, 205 Minn. 252, 285 N. W. 893, *supra,* we definitely settled the rule to be that the vending and delivery of supplies by a third party to the workman's employer does not amount to either a furtherance of a common enterprise or to the accomplishment of the same or related purposes. We there held that a coal company selling and delivering coal by truck to the city of Minneapolis for use in its incinerator and the city, plaintiff's employer, were not engaged in the same or related purposes. We cited the case of Anderson v. Interstate Power Co. 195 Minn. 528, 263 N. W. 612, where an electric power company and a telephone company to which it sold and furnished electricity were held not to be engaged in the same or related purposes, as authority for our holding and as "squarely on the point."

Defendant attempts to distinguish the case at bar upon the ground that it appears that the wire or wires in question were maintained for the sole and direct purpose of furnishing electricity to the Northern Pump Company, and claims that decision here is controlled by the following excerpt from Anderson v. Interstate Power Co. 195 Minn. 528, 535, 263 N. W. 612, 616, *supra:*

"It may be that at the trial of this action the evidence will disclose facts tending to show * * * that the particular power line which fell across the telephone line *was maintained for the direct purpose or benefit of the telephone company* as well as for the purpose of the power company, in either of which case the

question whether these companies were engaged in identical or related purposes would, under such circumstances, become a question of fact for the jury to determine." (Italics supplied.)

The language in question is at variance with our express holdings to the contrary in that case as well as in Tevoght v. Polson, 205 Minn. 252, 285 N. W. 893, and Smith v. Ostrov, 208 Minn. 77, 292 N. W. 745, *supra*, and for that reason we expressly overrule what was said in the quotation. The reason for our decision in all three cases is that the supplying of a commodity or a service to a customer upon the latter's premises does not amount to engaging in the same or a related purpose by the parties. Each conducts his own business in his own way to attain his own purpose independently of the other. The vendor's purpose is to sell his commodity or service without regard to the purpose of his customer in purchasing the same and not to accomplish any purpose with respect to the customer's business. The customer buys such commodity or service solely in furtherance of his own business without regard to the purposes of the vendor. Some instrumentality generally is used to deliver a commodity to a customer. In the Tevoght case it was an automobile truck. In principle it makes no difference whether that instrumentality is an automobile truck, a wire, as here, or a bushel basket, or a box. Not the particular instrumentality used to deliver the commodity, but the transaction for supplying the same determines whether the parties are engaged in the accomplishment of the same or related purposes. Hence the sale and delivery of a commodity for the use of a customer which is not the accomplishment of the same or a related purpose by the parties is not converted into such a purpose because of the fact that the vendor uses a wire rather than some other instrumentality to make delivery.

In Smith v. Ostrov, 208 Minn. 77, 292 N. W. 745, *supra*, following Tevoght v. Polson, 205 Minn. 252, 285 N. W. 893, *supra*, we held that the employer of a salesman soliciting orders for merchandise and the customer from whom such orders were solicited were not engaged in the same or related purposes. By the de-

cisions mentioned our rule has been settled and clarified, and we adhere to it.

Defendant was a supplier of electricity to the Northern Pump Company. It supplied nothing to plaintiff's employer, which was engaged in performing its contract with the pump company. It is not clear whether the parties intended that plaintiff's rights should be treated as if he were an employe of the pump company. In that view, his employer and defendant were not engaged in the accomplishment of the same or related purposes. Nor is a different result compelled because his employer was performing a service and defendant was furnishing electricity to the pump company. Each was engaged in prosecuting its own business, in its own way and for its own purpose, independently of the other. They were not engaged in the accomplishment of the same or related purposes.

Affirmed.

PIRSIG, JUSTICE (concurring specially).

In speaking of Minn. St. 1941, § 176.06, subd. 1(a, b), set out in the opinion of Mr. Justice Peterson, this court in Tevoght v. Polson, 205 Minn. 252, 254, 285 N. W. 893, said:

"The legislative history of [these subdivisions] throws no light whatever upon the purposes of the legislature or the extent to which it sought to restore to the employe his common-law right of action. It may be that it intended that his common-law right of action should only be eliminated in situations like those where contractors and subcontractors are engaged on the same project and their employes exposed to the hazards created by such mutual engagements. But our decisions have gone much further than that in depriving the employe of his common-law right of action."

Undoubtedly, it was the thought of the legislature that it was unjust that the rights and protection afforded several workmen of different employers under the workmen's compensation act should be different when these employes were working together on the same premises, on the same project, and subject to the same risks

of injury. The subdivision under consideration sought to carry out that policy. Under the conditions therein stated, the injured workman can either assert his claim against his employer under the act or recover for common-law negligence from the third party whose employes were also there and protected by the act. But he cannot do both, and the act expressly limits the amount of recovery against the third person to that which the employe would have received had he asserted his claim against his own employer. The intent, purpose, and policy of the act thus manifested is served only when the employes of different employers are engaged in a common activity. Subdivision 1(b) sought to limit the scope of the subdivision to that situation.

Misled by the confusing language used in the subdivision, we have not proceeded from this point of view. We have examined not the common activities of the employes but rather the common purposes or enterprise of the employers. These tests have only an indirect relation to the policy sought to be effectuated, and, in consequence, endless and fruitless litigation has come before this court over their application. We have said that "No two cases are alike, and it would be futile to attempt to distinguish or liken the facts in this case to any we have heretofore decided." Smith v. Kedney Warehouse Co. Inc. 197 Minn. 558, 563, 267 N. W. 478, 480, 269 N. W. 633.

It is my opinion that the approach we have previously adopted was a mistaken one and that it is our duty to correct it rather than wait for the legislature to do it for us. The statutory terms "common enterprise" and "same or related purposes" of the employers should be construed to mean that their employes were engaged in some common activity which brings them within the policy underlying the subsection. The recent cases cited in the opinion of Mr. Justice Peterson are in that direction. Since the present decision is in the same direction, I concur in the affirmance.