**Terry OPAY on behalf of himself and all others similarly situated, Appellant,**

v.

**EXPERIAN INFORMATION SOLUTIONS, INC., Respondent.**

No. A03–1832.

Court of Appeals of Minnesota.

June 15, 2004.

Thomas J. Lyons, Sr., Thomas J. Lyons & Associates, and Thomas J. Lyons, Jr.,

John H. Goolsby, Little Canada, MN, for appellant.

James S. Simonson, Gray, Plant, Mooty, Mooty & Bennet, Minneapolis, MN; and Jerome R. Doak, Jones Day, Dallas, TX, for respondent.

Considered and decided by SCHUMACHER, Presiding Judge; LANSING, Judge; and STONEBURNER, Judge.

## OPINION

STONEBURNER, Judge.

In this consumer fraud action, appellant claims that respondent violated Minn.Stat. § 13C.01, subd. 1(a) (2002), by charging more than $3.00 for consumer credit reports requested and received via the Internet. The district court dismissed appellant's claim for failure to state a claim upon which relief could be granted. We affirm.

## FACTS

Appellant purchased a copy of his consumer credit report from respondent via the Internet. Respondent charged appellant $9.00 for the report. Appellant initiated this consumer fraud action under Minn.Stat. § 325F.69 (2002), on behalf of himself and all others similarly situated, alleging that respondent violated the price limitation in Minn.Stat. § 13C.01, subd. 1(a), for consumer credit reports requested and received by mail. The district court granted respondent's motion to dismiss the action for failure to state a claim on which relief could be granted, holding that the statute does not apply to consumer credit reports requested and received via the Internet. This appeal followed.

## ISSUE

Did the district court err by dismissing appellant's class action alleging consumer fraud on the basis that the price cap of Minn.Stat. § 13C.01, subd. 1(a) (2002) does not apply to consumer credit reports purchased via the Internet?

## ANALYSIS

■ In reviewing cases that were dismissed for failure to state a claim on which relief can be granted, the only question before the appellate court is whether the complaint sets forth a legally sufficient basis for relief. *Barton v. Moore,* 558 N.W.2d 746, 749 (Minn.1997).

■ Statutory construction is a question of law, which this court reviews de novo. *Brookfield Trade Ctr., Inc. v. County of Ramsey,* 584 N.W.2d 390, 393 (Minn. 1998). Appellate courts "must give a plain reading to any statute it construes, and when the language of the statute is clear, the court must not engage in any further construction." *U.S. Specialty Ins. Co. v. James Courtney Law Office,* 662 N.W.2d 907, 910 (Minn.2003) (citations omitted). Plain meaning presumes the ordinary usage of words that are not technically used or statutorily defined, relies on accepted punctuation and syntax, and draws from the full-act context of the statutory provision. *Am. Tower, L.P. v. City of Grant,* 636 N.W.2d 309, 312 (Minn.2001) (words and phrases carry plain and ordinary meaning). "Although plain meaning is the governing principle in applying all statutory language, Minnesota courts will not give effect to plain meaning if it produces an absurd result or an unreasonable result that is plainly at variance with the policy of the legislation as a whole." *Occhino v. Grover,* 640 N.W.2d 357, 360 (Minn.App. 2002).

■ Appellant argues that the language of Minn.Stat. § 13C.01, subd. 1(a) (2002), imposing a price cap of $3.00 on consumer credit reports that are requested and received "by mail," may be plainly construed to include consumer credit reports requested and received via the Internet. Appellant relies on two recent dictionary definitions to support his proposition that the plain and ordinary meaning of "mail" as a method of delivery includes electronic transmissions. *See Black's Law Dictionary* 963 (7th ed.1999) ("[o]ne or more written or oral messages sent electronically (e.g., through e-mail or voicemail)"); Merriam Webster Online Dictionary mail[2, noun] definition 2.c, *at* http://www.merriamwebster.co m/cgi-bin/dictionary?book=Dictionary & va=mail (last visited June 8, 2004) ("[M]essages sent electronically to an individual (as through a computer system)").

The district court rejected the definitions asserted by appellant and focused on definitions from 1992, when the statute was enacted. In 1992, and even up to 1996, dictionaries did not include any type of electronic transmission in the definition of "mail." *See, e.g., American Heritage Dictionary of the English Language* 1083 (3d ed. 1992) ("Materials, such as letters and packages, handled in a postal system."); *Websters II New Riverside University Dictionary* 717 (1994) ("Materials handled in a postal system, as letters and packages."); *The Oxford Dictionary and Thesaurus* 903 (American ed. 1996) ("[L]etters and parcels, etc., conveyed by the postal system."). We agree with the district court that the plain meaning of "mail" did not include electronic transmissions when the statute was enacted, and the plain meaning of the unmodified term "mail" as currently used in the statute does not include electronic transactions.

In 1996, the federal companion statute, the Fair Credit Reporting Act (FCRA), was amended to allow disclosure of consumer credit reports in a variety of ways, including "by electronic means." Pub.L. No. 104–206, § 2408(e)(1), 110 Stat. 3009–438, 3009–439 (codified as amended at 15 U.S.C. § 1681h(b)(2) (2000)). The Minnesota Legislature amended Minn.Stat. § 13C.01, subd. 1(a), in 1999 to lower the price cap for consumer reports requested and received by mail from $8.00 to $3.00, but did not amend the statute to include requests of consumer reports by electronic transmissions or to indicate that use of the term "mail" includes electronic transmissions. 1999 Minn. Laws ch. 244, § 1. This is significant because between 1992 and amendment of the statute in 1999, the legislature differentiated between the use of mail and electronic transmissions in amending other statutes. *See* 1999 Minn. Laws ch. 107, § 43 (codified at Minn.Stat. § 268.086, subd. 3(a) (2002)) (specifying methods for filing requests for unemployment benefits as "by telephone", "by electronic transmission", "by mail", or "by in-person interview"); 1998 Minn. Laws ch. 343, art. 1, § 17 (codified at Minn.Stat. § 58.17, subd. 3 (2002)) ("offer means any advertisement or solicitation of any type, including an advertisement or solicitation in newspapers and magazines, by mail, by telephone, on television, on radio, or via the Internet or any other electronic medium of any kind, for residential mortgage originator services."); 1996 Minn. Laws ch. 437, § 5 (codified at Minn.Stat. § 114C.12, subd. 4(c) (2002)) (requiring public notice by "posting in public buildings, by publication in local newspapers or periodicals, by publication in the State Register, or by an alternate method deemed by the commissioner to be more effective such as an electronic bulletin board or mail service").

Appellant argues that to exclude electronic transmissions from the definition of "mail" as used in the statute would lead to the absurd result of leaving consumers who request and receive credit reports via the Internet without the protections afforded by the statute. But all of these protections are afforded through the federal FCRA and the accompanying Federal Trade Commission (FTC) regulations that cover all consumer credit reports, no matter how they are requested or delivered. The FCRA requires a summary of the consumers rights, including the right to dispute, to be sent with every credit report, a response to every consumers request for his or her credit report, and a price cap on all reports. 15 U.S.C. §§ 1681g, 1681g(c), 1681h(b)(2), 1681j(a)(2); FTC Notice Regarding Charges for Certain Disclosures, *available at* http://www.ftc.gov/os/2002/12/fedcreditstatutesfrn.htm (review and modification of maximum charge by FTC). Appellant concedes that respondent was in compliance with all applicable federal laws and regulations.

Appellants reliance on the federal regulations of the Textile Fiber Products Identification Act (TFPIA) for the proposition that "mail" includes electronic mail is not persuasive. Under the TFPIA regulations, the FTC provided advance notice to textile companies as to how the government would construe the terms "mail order catalog" and "mail order promotional material." *See* 15 U.S.C. § 70e(c) (2000); 16 C.F.R. § 303.1(u). And the regulation lists "by mail" and "electronic mail" as separate forms of communications, supporting respondents assertion that "mail" does not include electronic mail. 16 C.F.R. § 303.1(u) (listing purchase of textile products "by mail, telephone, electronic mail, or some other method").

Appellant also relies on a recent trademark case to assert that "mail" includes electronic transmissions. But the issue in

*America Online, Inc. v. AT&T Corp.*, was not whether the statutory definition of the word "mail" includes electronic transmissions. 64 F.Supp.2d 549 (E.D.Va.1999), *aff'd in part, vacated in part, and remanded,* 243 F.3d 812 (4th Cir.2001). Rather, the case involved whether AOL's tag line, "YOU HAVE MAIL," qualified as a protected trademark. *Id.* Moreover, the *AOL* court noted that at the time the case was heard in 1999, 92 of the dictionary definitions introduced by the parties did not include electronic mail within the definition of "mail." *Id.* at 564.

### DECISION

The district court did not err by dismissing appellant's case for failure to state a claim upon which relief could be granted. The $3.00 price cap in Minn.Stat. § 13C.01, subd. 1(a) (2002), does not apply to consumer credit reports obtained via the Internet. Because respondent did not violate Minn.Stat. § 13C.01, subd. 1(a), appellant failed to state a claim under Minn. Stat. § 325F.69 (2002).

**Affirmed.**